**UNITED STATES BANKRUPTCY COURT**　　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
In re:　　　　　　　　　　　　　　　　　　　　　:　　Chapter 7
　　　　Transfix Productions LLC,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Debtor.　　　　　　:　　Case No. 23-11283 (JLG)
-------------------------------------------------------------------------x
Deborah J. Piazza, as Chapter 7 Trustee of　　　:
Trustee of Transfix Productions LLC,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Plaintiff,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　　　　　　:　　Adv. P. No.: 24-04040 (JLG)
　　　　　　　　　　　　　　　　　　　　　　　　:
Michael Blatter,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Defendant.　　　　　:
-------------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER RESOLVING DEFENDANT'S MOTION TO DISMISS

**A P P E A R A N C E S :**


TARTER KRINSKY & DROGIN LLP
*Counsel to the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, NY 10018
By:　　Robert Wolf
　　　　Jacob B. Gabor

KAUFMAN DOLOWICH LLP
*Counsel to the Defendant*
40 Exchange Place
New York, NY 10005
By:　　Patrick M. Kennell
　　　　Kathleen A. Mullins

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

Transfix Productions LLC ("Transfix," the "Debtor" or the "Company") is a New York

Limited Liability Company (a "LLC") founded in 2021 by Michael Blatter ("Blatter"). The

Company, Blatter and the other Members of the Company are bound by that certain Amended and

Restated Operating Agreement of Transfix Productions, LLC, dated February 1, 2023 (the

"Operating Agreement" or "Op. Agmt.").[2] This agreement governs the Company's operations.

On August 11, 2023 (the "Petition Date"), Transfix filed a voluntary petition for relief

under chapter 7 of the Bankruptcy Code in this Court.[3] Shortly thereafter, Deborah Piazza was

appointed the chapter 7 trustee of the Debtor's estate (the "Trustee"). She continues to serve in

that capacity.

Among the Debtor's assets is an insurance policy (the "Policy") with the insurer Scottsdale

Insurance Company (the "Insurer," and with the Trustee, the "Parties") that contains both an

Employment Practices Coverage Section and a Directors and Officers and Company Coverage

Section (the "D&O Section"). On November 28, 2023, the Trustee, through her counsel,

transmitted to the Insurer notice of the Trustee's claims against Blatter under the D&O Section of

the Policy (the "Notice") for alleged breaches of his fiduciary duties as a director and officer of

the Debtor (the "Claims"). The Insurer retained counsel to represent and defend Blatter in

---

[1] Capitalized terms shall have the meanings ascribed to them herein.

[2] The Operating Agreement is annexed to the Complaint as Exhibit 2.

[3] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1. References to "AP ECF No.    " are to documents filed on the electronic docket of this adversary proceeding, *Piazza v. Blatter*, Adv. Pro. No. 24-04040 (the "Adversary Proceeding"). Citations to "ECF No. __" refer to documents filed on the electronic docket of the Debtor's chapter 7 case, Case No. 23-11283 (the "Chapter 7 Case").

connection with the Claims set forth in the Notice. Through their respective counsel, the Parties agreed to mediate the Claims and Blatter's defenses thereto (collectively, the "Dispute"), in an effort to reach consensual resolution of the Dispute without the need for litigation. The Court authorized and directed mediation between the parties and the appointment of a mediator (the "Mediator").[4]

On November 7, 2024, the Mediator conducted an initial mediation session with the Parties, their respective counsel, and representatives of the Insurer. At the conclusion of that initial mediation session, the Dispute remained unresolved. *See* Mediation Stipulation ¶¶ B, C.[5] The Parties agreed with the Mediator to stay the mediation pending the Trustee's commencement of an adversary proceeding by filing a complaint asserting the Claims against Blatter. *Id.* ¶¶ 1, 4. They further agreed that Blatter would promptly file a motion to dismiss the complaint, and that upon resolution of the motion, the Parties would arrange with the Mediator a mutually agreeable date and time upon which the mediation between the Parties shall resume. *Id.* ¶¶ 2, 4. They also agreed to stay any discovery pending the Court's resolution of the motion to dismiss. *Id.* ¶ 3.

On December 6, 2024, the Trustee commenced this Adversary Proceeding by filing a one-count Complaint[6] against Blatter. In the Complaint, the Trustee seeks a judgment in an amount estimated to be in excess of $8.1 million for damages occasioned by Blatter's alleged breaches of his fiduciary duties owed to the Company and the Company's creditors.

---

[4] *Stipulation and Order Authorizing and Directing Mediation Between the Chapter 7 Trustee and Michael Blatter*, ECF No. 64.

[5] *See Stipulation and Order Regarding Contemplated Adversary Proceeding and Further Mediation*, ECF No. 66 (the "Mediation Stipulation").

[6] *See Complaint,* AP ECF No. 1 (the "Complaint"). A copy of the Complaint is annexed as Exhibit A to the *Declaration of Robert A. Wolf*, AP ECF No. 10 (the "Wolf Declaration"), submitted in support of the Opposition. The Complaint includes the numbered Exhibits appended to that filed pleading.

The matter before the Court is Blatter's motion to dismiss the Complaint and the Adversary Proceeding in its entirety, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)")[7] (the "Motion").[8] The Trustee filed an objection to the Motion (the "Opposition" or "Oppn.").[9] Blatter filed a reply in further support of the Motion (the "Reply").[10] The Court heard argument on the Motion. For the reasons stated herein, the Court dismisses the Complaint without prejudice.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND[11]

### The Company

Transfix is a New York limited liability company. The Operating Agreement "govern[s] the ownership, operation and management of the Company and the relative rights, powers and

---

[7] Rule 12(b)(6) is made applicable to an adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

[8] *Notice of Motion by Defendant Michael Blatter to Dismiss the Complaint*, AP ECF No. 7.

[9] *Plaintiff-Trustee's Memorandum of Law in Opposition to Defendant Michael Blatter's Motion to Dismiss*, AP ECF No. 9.

[10] *Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss*, AP ECF No. 11.

[11] The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. Accordingly, the facts recited herein are those alleged in the Complaint, which the Court presumes to be true in resolving the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact."). Moreover, the Court can consider documents annexed to or relied upon in the Complaint. *See, e.g., Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003).

obligations of the members of the Company." Op. Agmt. Art. I. It identifies Blatter as the "Managing Member." *Id.* at 5 (Definitions - "Managing Member").

In 2021, Blatter, with others, formed Transfix as an entertainment company that would produce and present an art exposition on a touring basis at various city sites. Complaint ¶ 2. The Transfix business plan was to lease large scale artwork from artists and display it at those expositions. *Id.* Its first exposition (the "Transfix Experience") was at Resorts World Hotel in Las Vegas, Nevada (the "Hotel"). *Id.* ¶ 3. It was scheduled to run for a six-month period, between April and October 2023. *Id.* The Transfix Experience opened on April 21, 2023, but closed six weeks later in May 2023. *Id.* ¶ 4. The Trustee lays the business failure at Blatter's feet. In short, she contends that the abrupt closure of the exposition was caused by Blatter's "intentional, extremely reckless and grossly negligent acts and omissions as [Debtor's] CEO." *Id.* ¶¶ 4, 23.

First, the Trustee asserts that while acting as CEO, Blatter failed to adhere to budgetary controls. *Id.* ¶¶ 24-25. She says that in January 2023, Transfix projected to launch the exposition for a total cost of $7.5 million, but that at an investor presentation in April 2023, Blatter disclosed that Transfix had spent $7.8 million, and required an additional $2.125 million. *Id.* ¶ 25. She maintains that Blatter's actions caused Transfix to suffer from a "woeful lack of sufficient working capital," as evidenced by the fact that one week prior to the Transfix Experience opening, Transfix had only $53,000 in its bank accounts, less than half the debt outstanding on only one of its credit cards, *id.* ¶ 26, and had to solicit additional last-minute funding of $1.25 million from an investor, the majority of which he spent prior to opening night, *id.* ¶ 27. On opening night, "Transfix had only approximately $110,000 in the bank." *Id.*

Transfix's financial woes did not go unnoticed by the public. Its employees and other observers "highlight[ed] Blatter's utter recklessness and gross financial irresponsibility in

preparing for and producing the Transfix Experience[.]" *Id.* ¶ 28. The Trustee quotes an anonymous online forum and a producer of the Transfix Experience for the proposition that Blatter failed to budget, was irresponsibly spending money, and was disrespectful. *Id.* ¶¶ 29-31.

The Trustee also complains that Blatter made grossly unrealistic estimates of the number of ticket sales Transfix would be able to make for admission to the Transfix Experience. *Id.* ¶ 33. Blatter projected approximately 3,000 ticket sales per night, but actual ticket sales ranged from 200 to 800 per night. *Id.* She says that despite the poor ticket sales, Blatter continued to have Transfix engage in "severe overspending" and allowed the Transfix Experience to be grossly overstaffed. *Id.* ¶ 34. By the fourth week of the exposition Transfix was reportedly not meeting its payroll obligations. *Id.*

The Trustee maintains that Blatter's disregard for budgetary constraints, and severe overspending had wide-ranging negative effects. By reason of Blatter's actions, Transfix incurred millions of dollars of expenses which it could not pay. Blatter failed to disclose to employees and independent contractors working for Transfix that the Company did not have funds to pay them for their services. *Id.* ¶ 39. As a consequence, in the Chapter 7 Case, a substantial number of employees, independent contractors, manufacturers of parts, material suppliers, vendors, and investors involved with the Transfix Experience filed proofs of claim against the Debtor's estate and complained about Blatter's behavior. *Id.* ¶¶ 32, 35-40, 45.

Blatter's excessive spending and budgetary failures caused Transfix to default on its lease payment obligations to the artists whose work was being displayed during the exposition. *Id.* ¶¶ 41-42. The Trustee alleges that Blatter, as CEO, bears responsibility for the financial and other hardships endured by the artists. *Id.* ¶ 45. Blatter also failed to remove Transfix's property from

the Hotel site and incurred significant charges by a moving and storage company tasked with removing such property. *Id.* ¶ 47.

## The Chapter 7 Case

Blatter caused Transfix to file for chapter 7 bankruptcy on August 11, 2023, two and a half months after the Transfix Experience closed. *Id.* ¶ 10. Commencing no later than February 2023, and continuing through and including the Petition Date (the "Insolvency Period"), the Company was insolvent in that "(a) the amount of its liabilities greatly exceeded the amount of its assets; (b) it was unable to pay its obligations as they became due; and (c) it was grossly undercapitalized for the business in which it was engaged, namely, the operation of the Transfix Experience." *Id.* ¶ 49. On the Petition Date, Transfix had $7,717 in its bank account. *Id.* ¶ 51.

## The Complaint

The gravamen of the Complaint is that under Section 4.5(c) of the Operating Agreement,[12] Blatter is liable to the estate for substantial damages occasioned by his alleged multiple intentional, extremely reckless and grossly negligent actions and omissions committed by him in his capacity as Debtor's CEO, in bad faith and in breach of the fiduciary duties which he owed to the Debtor and to its creditors. The Trustee contends that pursuant to Section 4.5(c), while acting as CEO, Blatter owed the Company fiduciary duties to exercise the care, diligence and skill that a reasonably prudent person in like position would exercise under comparable circumstances, and

---

[12] Hereinafter, unless otherwise specified, references to "Section __" are to provisions of the Operating Agreement. Article IV of the Operating Agreement governs the "Management Of The Company." Section 4.5(a) addresses the "Designation and Appointment" of Officers. It authorizes the Managing Member to "designate and appoint individuals as Officers of the Company." Section 4.5(c) regulates the "Duties of Officers." It states:

> The officers, in their performance of their duties as such, shall owe to the Company duties of loyalty and due care of the type owed by the officers of a business corporation to such business corporation under corporate laws of the State of New York.

Op. Agmt. § 4.5(c).

7

with a view to the Company's best interests. Complaint ¶ 54. She contends that in that capacity, Blatter was duty-bound (i) to administer Transfix's affairs honestly, (ii) to act solely in furtherance of Transfix's interests, and not to act in furtherance of his own personal interests, (iii) to safeguard and protect Transfix's property and assets, not to waste any of those assets, and not to favor improperly or illegally his own interests, and (iv) to perform in good faith and diligently all of his duties on behalf of Transfix. *Id.* She also maintains that based on the fact that Transfix was continually insolvent during the Insolvency Period, Blatter also owed fiduciary duties to Transfix's numerous creditors, and was bound to take reasonable steps to preserve Transfix's assets for the benefit of said creditors. *Id.* ¶ 55. The Trustee maintains that Blatter "consistently breached" these duties by committing "intentional, extremely reckless and grossly negligent acts and omissions in his conduct of Transfix's financial and related affairs." *Id.* ¶ 56. Blatter's alleged wrongdoing includes: recklessly failing to set or adhere to budgetary controls and intentionally causing Transfix to incur excessive expenses; grossly overestimating ticket sales; knowingly arranging for extreme overstaffing despite poor ticket sales; intentionally failing to disclose to employees and contractors that Transfix lacked funds to pay them; intentionally causing Transfix to breach lease obligations to artists; failing to arrange for removal of Transfix property from the Hotel site; and intentionally failing to preserve Transfix assets for creditors' benefit. *Id.*

The Trustee asserts that as a result of Blatter's alleged breaches of his fiduciary duties owed to Transfix and to Transfix's creditors, more than eighty of those creditors have filed timely claims against the Debtor's estate in an aggregate amount which exceeds $8.1 million. *Id.* ¶ 57. She argues that Blatter's alleged breaches of his fiduciary duties have damaged the Debtor's estate in an amount in excess of $8.1 million, and that she is entitled to judgment against Blatter in an amount

to be determined at trial, currently estimated to be in excess of $8.1 million, plus interest and costs. *Id.* ¶¶ 58-59.

## The Motion

Blatter is the "Managing Member" of the Company. *See* Op. Agmt. Art. I, p. 5. To plead a claim for breach of fiduciary duty against him under New York law,[13] the Trustee must allege facts sufficient to demonstrate "(1) the existence of a fiduciary duty; (2) a knowing breach of that duty; and (3) damages resulting therefrom." *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014). Blatter contends that the Court must dismiss the Complaint because as a matter of law, the Trustee cannot demonstrate the existence of a fiduciary duty. Motion at 6.

Blatter maintains that while the general rule under New York law is that a managing member of an LLC owes the traditional fiduciary duties of care and loyalty to the company, section 417(a) of the New York Limited Liability Company Law ("LLCL § 417(a)") expressly permits the waiver of fiduciary and other duties by an LLC's manager. He says that through the Operating Agreement that is what occurred in this case. *Id.* at 7. He argues that the Operating Agreement precludes any claim for breach of fiduciary duty, or any other duty, against him. *Id.* at 8. As support, he points to Sections 4.7 and 5.11. *Id.* at 7-8. Section 4.7 states in part, that "no Person, in such Person's capacity as a Member,[14] shall have any duties or liabilities, including fiduciary duties, to the Company, any Member or any other Persons bound by this Agreement, and all such

---

[13] New York law applies in this case. "A claim for breach of fiduciary duty brought against a corporate officer or director raises issues relating to the internal affairs of a corporation and therefore should be governed by the law of the state of incorporation of the relevant corporation." *In re Hydrogen, L.L.C.,* 431 B.R. 337, 346 (Bankr. S.D.N.Y. 2010). The Operating Agreement states that the company was formed under the laws of New York and provides that New York law governs any disputes. *See* Op. Agmt. §§ 2.1 and 11.12.

[14] "Member" is defined in the Operating Agreement as "the members of the Company, who or which shall be (i) each Person signatory to this Agreement on the date hereof in the capacity of a 'Member', and (ii) all Persons who or which are signatories to this Agreement in the capacity of a Member and admitted as members of the Company from time to time." Op. Agmt. Art. I. Schedule A annexed to the Operating Agreement reflects twelve total Members of LLC, including Blatter.

duties or liabilities are hereby irrevocably disclaimed and eliminated." Op. Agmt. § 4.7.[15] In part,

Section 5.11 provides that Members are insulated from personal liability: "no Member shall have

any personal liability whatsoever in such Member's capacity as a Member, whether to the

Company, to any of the other Members, to the creditors of the Company or to any other third party,

for the debts, liabilities, commitments or any other obligations (whether arising in contract, tort or

otherwise) of the Company or for any losses of the Company." Op. Agmt. § 5.11.[16] He argues that

together, those provisions effectively insulate him from the Claims.

Moreover, he contends that the Trustee misplaces her reliance on Section 4.5(c), in

attempting to plead around the clear import of the "No Fiduciary Duties" waiver and Member

liability limitation clauses by characterizing Blatter as having acted solely as an "officer" of

Transfix, because he also outwardly used a CEO title. Motion at 8 (citing Complaint ¶¶ 6, 53-54).

He argues that the "entirety" of the Operating Agreement shows that Blatter was, in fact, the

---

[15] Section 4.7 addresses the duties of the Company's Managers. It is titled "No Fiduciary Duties" and states:

> To the maximum extent permitted by the NY LLC Law and applicable law, no Person, in such Person's capacity as a Member, shall have any duties or liabilities, including fiduciary duties to the Company, any Member or any other Persons bound by this Agreement, and all such duties and liabilities are hereby irrevocably disclaimed and eliminated. The provisions of this Agreement, to the extent they restrict or otherwise modify or eliminate the duties and liabilities, including fiduciary duties of a Member otherwise existing at law or in equity, are agreed by the Members to replace any such other duties or liabilities of the Members.

Op. Agmt. § 4.7.

[16] Article V of the Operating Agreement governs "Voting and Other Rights of Members." Section 5.11 speaks to "Certain Limitations on Member Liability." It provides:

> To the maximum extent permitted by applicable law, no Member shall have any personal liability whatsoever in such Member's capacity as a Member, whether to the Company, to any of the other Members, to the creditors of the Company or to any other third party, for the debts, liabilities, commitments or any other obligations (whether arising in contract, tort or otherwise) of the Company or for any losses of the Company. Notwithstanding anything contained herein to the contrary, the failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business and affairs under this Agreement or the NY LLC Law will not be grounds for imposing personal liability on the Members (in their capacities as such) for obligations of the Company, except to the extent constituting fraud, willful misconduct, or a violation of applicable law or the express terms of this Agreement by such Members.

Op. Agmt. § 5.11.

Managing Member of the Company, and not merely the Company's CEO. *Id.* To that end, he notes

that the agreement gives the Managing Member (*i.e.*, Blatter) the sole authority to designate and

appoint officers of Transfix. *Id.* (citing Op. Agmt. § 4.5(a) ("The Managing Member may, from

time to time, designate and appoint individuals as officers of the Company.")). He argues it would

be nonsensical to read the Operating Agreement to provide that when Blatter appointed himself

the CEO, he stripped himself of all the benefits and protections of the Managing Member role as

afforded under the Operating Agreement. Motion at 8.

Finally, Blatter argues that, assuming arguendo, that it was determined that he was solely

the CEO of Transfix, Section 8.8 nonetheless would exculpate him from personal liability because,

by application of Section 8.1, he is an "Indemnitee." *Id.* at 9.[17]

---

[17] Article VIII of the Operating Agreement governs "Indemnification and Limitation of Liability." Section 8.1 addresses the Company's "Obligation to Indemnify" its Member. It states:

> The Company shall, to the maximum extent permitted by applicable law, indemnify, defend and hold harmless the Managing Member and each officer of the Company (individually, in each case, an "Indemnitee"), from and against any and all losses or liabilities suffered or incurred by such Indemnitee arising out of the business, activities or operations of the Company or the performance of such Indemnitee's duties with respect to the Company (including serving at the Company's request as director, partner, manager, officer, trustee or fiduciary of another Person, or serving on any committee, or acting as an administrator of any benefits or other plan or trust), regardless of whether the Indemnitee continues to be a manager or officer thereof at the time any such loss or liability is paid or incurred; provided*, that no Indemnitee may be indemnified by the Company from and against any losses or liabilities which result from the gross negligence, willful misconduct, fraud or violation of law of or by such Indemnitee.

Op. Agmt. § 8.1. Section 8.8 contains is titled "Exculpation." It states:

> To the maximum extent permitted by applicable law, no Indemnitee shall have personal liability to the Company or the Members for monetary damages for breach of such Indemnitee's fiduciary duties (if any) or for any act or omission performed or omitted by such Indemnitee in good faith on behalf of the Company. To the maximum extent permitted by applicable law, no Indemnitee shall have personal liability to the Company or the Members for relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters that such Indemnitee reasonably believes are within such Person's professional or expert competence.

Op. Agmt. § 8.8.

**The Opposition**

The Trustee contends that the Court should deny the Motion because there is no merit to

Blatter's argument that at all times he acted as Debtor's Managing Member and is thus exempt

from personal liability pursuant to the exculpation provisions of the Operating Agreement. *See*

Oppn. at 5. She says that defense is belied by evidence that shows that as Blatter prepared for and

operated the Transfix Experience exposition, he held himself out as Debtor's CEO, not its

Managing Member. *Id.* As support, she argues, in part:

> Blatter executed the "multiplicity of the Debtor's agreements with respect to
> the Transfix Experience," including those with artists, investors and the Hotel,
> as the Debtor's CEO, not as its Managing Member.
>
> In his email signature block, his title appeared as CEO, not as Managing
> Member.
>
> Reported comments made about Blatter after the demise of the Transfix
> Experience by the Debtor's Director of Artist Relations and Community Impact
> and by an observer in the entertainment industry referred to him as the Debtor's
> CEO, not as its Managing Member.

*Id.* at 5, 6. Moreover, she asserts that an organizational chart of the Debtor contains a box for

Blatter at the top thereof with his title of CEO and the classification "(full time)," and that Blatter

executed the Petition with the title "Founder & CEO." *Id.* at 6.[18]

The Trustee denies that the exculpation provisions in Section 4.7 applicable to Blatter's

conduct in "his capacity as a Member" shield him from liability for the numerous breaches of his

fiduciary duties which he committed in his capacity as the Debtor's CEO. *Id.* She says that instead,

Section 4.5(c) imposes fiduciary duties on Blatter, as an officer of the Debtor. *Id.* at 7. She argues

that as CEO, "Blatter owed the [C]ompany the duties to exercise the care, diligence and skill that

---

[18] Copies of the organizational chart and relevant pages of the Petition are annexed to the Wolf Declaration as
Exhibits E and F, respectively.

a reasonably prudent person in like position would exercise under comparable circumstances and with a view to the Debtor's best interests, to administer the Debtor's affairs honestly, to act solely in furtherance of the Debtor's interests, to safeguard and protect the Debtor's property and assets, not to waste any of those assets, and to perform in good faith and diligently all of his duties on the Debtor's behalf." *Id.* (citations omitted). Moreover, she contends that because the Debtor was insolvent, Blatter also owed fiduciary duties to Debtor's creditors. *Id.*

The Trustee also argues that application of Sections 4.7, 5.11 and 8.8 does not support Blatter's request for relief under the Motion. She contends that by its terms, Section 4.7 does not absolve Blatter of liability for his breaches of his fiduciary duties as the Debtor's CEO. *Id.* at 8. She also asserts that Blatter misplaces his reliance on Section 5.11 because, like Section 4.7, it absolves a member of the Debtor from personal liability only with respect to "such Member's capacity as a Member," not as an officer. *Id.* (quoting Op. Agmt. § 5.11). She asserts that Section 5.11 does not at all address fiduciary duties of a member, let alone an officer, of the Debtor. *Id.* Rather, it "eliminates such member's liability solely for obligations of the Debtor (i.e., 'for the debts, liabilities, commitments or any other obligations [whether arising in contract, tort or otherwise] of the Company or for any losses of the Company')." *Id.* The Trustee argues that Section 8.8 does not absolve Indemnitees (as defined in Section 8.1) from liability to creditors, and that reading that section to exculpate Blatter from all liability for breaches of his fiduciary duties would render Section 4.5(c) meaningless, and thereby contravene the fundamental legal principle that "a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect'" *Id.* at 9 (quoting *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 581 (2017)).

The Trustee also contends that Blatter's construction of the Operating Agreement runs afoul of the limited scope of LLCL § 417(a). *Id.* at 9. It authorizes a limited liability company to include in its operating agreement a provision "eliminating or limiting the personal liability of managers to the limited liability company or its members for any damages for any breach of duty in such capacity…" *Id.* (citing LLCL § 417(a)). The Trustee argues that nothing in that provision authorizes the Company to have such an exculpation provision eliminating the personal liability of an individual acting in her capacity as an officer, as distinguished from one acting in her capacity as a manager. *Id.*

The Trustee contends that the Court should deny the Motion because as a matter of law, in accordance with Section 4.5(c) and applicable New York case law, Blatter has liability both to the Debtor's estate and to its creditors for his numerous breaches of his fiduciary duties committed as the Debtor's CEO. *Id.*

Alternatively, the Trustee asserts that even if provisions of the Operating Agreement exculpate Blatter for actions taken by him as Debtor's CEO, under LLCL § 417(a), he is accountable for his actions and omissions which he committed in bad faith and intentionally and that are specifically alleged in the Trustee's Complaint. *Id.* at 10. She maintains that while LLCL § 417(a) permits a limited liability company to include a provision in its operating agreement exempting its managers from liability for certain breaches of duty, the statute provides that no such exculpation provision in the company's operating agreement shall eliminate or limit:

> the liability of any manager if a judgment or other final adjudication adverse to him or her establishes that his or her acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he or she personally gained in fact a financial profit or other advantage to which he or she was not legally entitled or that with respect to a distribution the subject of subdivision (a) of section five hundred eight of this chapter his or her acts were not performed in accordance with section four hundred nine of this article…

14

*Id.* (quoting LLCL § 417(a)).

The Trustee asserts that the Complaint more than sufficiently alleges that Blatter committed actions and omissions in bad faith and/or engaged in intentional misconduct which, if proven, would result in a final adjudication that would fall within the above-quoted exception to exculpation under LLCL § 417(a). *Id.* at 11. Moreover, she contends that, at the very least, her detailed allegations of Blatter's conduct raise factual issues that require discovery and adjudication by the Court and are not susceptible to dismissal at this early stage of litigation. *Id.*

## The Reply

In the Reply, Blatter challenges the merits of the Opposition and reasserts that the Complaint fails to state a claim for breach of fiduciary duty. In sum, Blatter argues that there is no avoiding the personal liability protections afforded to him under the Operating Agreement. He acknowledges that in documents and emails he held himself out as being the head of Transfix as its "Founder & CEO" and that certain members of the public viewed him as such. Reply at 2. Still, he contends that contrary to the Trustee's assertions, irrespective of those representations, or how he was perceived by the public, under the Operating Agreement and New York law, he is exculpated from any such duty and protected from liability. *Id*. at 1. Blatter maintains that the Court should dismiss the Complaint, with prejudice, because—

> (i) The Operating Agreement expressly provides that Transfix's members and managers owe no fiduciary or other duties to Transfix and enjoy exculpation from liability, and

> (ii) New York law upholds such standard exculpation provisions favoring members, managers and officers of limited liability companies.

*Id.* at 2.

Blatter argues that, like her Complaint, the Trustee's Opposition, ignores his true corporate capacity (i.e., Managing Member) and the broad protection afforded him by the Operating Agreement. *Id*. He denies that there is legal support for the notion that by holding himself out as Transfix's CEO, he waived his status as its Managing Member, and with it, the protections accorded the Managing Member under the Operating Agreement, and notes that the Trustee has cited none. *Id*. at 3.

Further, Article IV of the Operating Agreement vests the Managing Member with the Management of the Company. *See* Op. Agmt. Art. IV. To that end, as Managing Member, Blatter had sole authority "to appoint and replace officers and other representatives of the Company, delegate any other or all management powers hereunder to such Persons." *Id*. § 4.1(b). Blatter challenges the Trustee's contention that when he began using the title "Founder & CEO," he "prepared for and administered" Transfix solely as CEO and gave up his role as Managing Member. Reply at 4 (citing Oppn. at 3). Blatter says that argument makes no practical or legal sense, because no one in his position, who has complete liability protection under the Operating Agreement's waiver-of-liability and exculpation provisions, would appoint himself as an unprotected mere officer. *Id*. at 4. And that Blatter did not do so. *Id*.

Blatter also contends that in her Opposition, the Trustee misplaces her reliance on Section 4.5(c) by completely ignoring or wholly misconstruing the protective provisions of the Operating Agreement favoring him. *Id*. at 5. Section 4.5(c) provides that "officers, in the performance of their duties as such, shall owe to the Company duties of loyalty and due care of the type owed by the officers of a business corporation …" Op. Agmt. § 4.5(c). Blatter contends that the Trustee's analysis of the Operating Agreement ends there. Reply at 5. He says that analysis fails because it

ignores the remainder of the Operating Agreement—namely: Article I, which provides "'Managing Member' shall mean Michael Blatter"; Section 4.7 (No

> Fiduciary Duties), which waives any duties, including fiduciary duties, as to any Member including the Managing Member; Section 5.11 (Certain Limitations on Member Liability), which broadly immunizes Members from "any personal liability whatsoever"; and Section 8.8 (Exculpation), which further crystalizes the shield from personal liability for "Indemnitees," defined at Section 8.1 to include "the Managing Member and each officer of the Company."

*Id.* at 5-6. Blatter argues that the Trustee cannot simply ignore his actual corporate role under the governing documents, which is what her Opposition seeks to do. *Id*. at 6.

Blatter also argues that the Trustee misconstrues Sections 5.11 and 8.1. *Id.* He says that while the Trustee suggests that the broad waiver of liability afforded by Section 5.11 is somehow limited and "does not address at all fiduciary duties . . . ," *id.* at 8, it actually bars "any personal liability whatsoever," including whether arising from a fiduciary duty or otherwise, *id.* at 6 (quoting Section 5.11).

In part, Section 8.8 provides that "[t]o the maximum extent permitted by applicable law, no Indemnitee shall have personal liability to the Company or the Members for monetary damages for breach of such Indemnitee's fiduciary duties (if any) or for an any act or omission performed or omitted by such Indemnitee in good faith on behalf of the Company." Op. Agmt. § 8.8. Blatter asserts that the Trustee attempts to limit the scope of Section 8.8's exculpation for "Indemnitees" by arguing that Section 8.1 does not exculpate "Indemnitees" from claims of creditors and that exculpating Transfix's officers would conflict with Section 4.5(c). Reply at 6. Section 8.1 defines "Indemnitees" to include both Transfix's Managing Member and its officers. *See* Op. Agmt. § 8.1. Blatter contends that while Section 8.8 does not use the term "creditor," Section 8.1 discusses "Indemnitees" as being protected "from and against any and all losses or liabilities suffered or incurred by such Indemnitee arising out of the business, activities or operations of the Company or the performance of such Indemnitee's duties with respect to the Company." Reply at 6-7

(quoting Op. Agmt. § 8.1). He argues that there is nothing ambiguous or inconsistent about defining the scope of an officer's duties and responsibilities and then agreeing to indemnify and exculpate that officer from legal liability as a result of working for the Company. *Id*. at 7.

Finally, Blatter asserts the Complaint does not allege a claim for relief under the exception to exculpation for conduct determined to be "in bad faith or involv[ing] intentional misconduct." *Id*. (quoting LLCL § 417(a)). In short, Blatter argues that the Complaint does not invoke the phrase "bad faith" and the facts alleged in support of the Complaint do not support even a reasonable inference of "bad faith." *Id*. at 8. He contends that the Complaint's and Opposition's labels of Blatter's behavior as "intentional," "reckless," and "knowing," are not supported by facts, and that those conclusory allegations do not allege bad faith behavior. *Id*. at 9. He maintains that to plead facts sufficient to allege "bad faith" so as to overcome the waiver and exculpation clauses of the Operating Agreement, the Trustee must allege facts giving rise to the inference that Blatter's actions were motivated by an "improper purpose." *Id*. at 8 (citations omitted). He asserts that the Complaint is "completely devoid of any mention, let alone any direct or even implied assertion, of a motive or improper purpose by [him] for the allegedly 'intentional,' 'reckless,' and 'knowing' conduct of which the Trustee accuses him." *Id*. at 8-9.

## <u>LEGAL STANDARD</u>

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6). A court's role in evaluating a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Liu v. Credit Suisse First Bos. Corp. (In re Initial Pub. Offering Sec. Litig.)*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks and citation omitted); *see also Koppel v. 4987 Corp.*, 167 F.3d

125, 133 (2d Cir. 1999) (plaintiff need only allege, not prove, sufficient facts to survive a motion to dismiss).

In evaluating a motion to dismiss, the Court must accept a complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Accordingly, the allegations must be taken as true, the complaint must contain more than just a formulaic recitation of the elements of a cause of action, and the court should "identify[] allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.* at 664; *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008) ("bald assertions and conclusions of law will not suffice"). "To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged.'" *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) (citing *Iqbal*, 556 U.S. at 663).

Dismissal is only warranted where it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *See In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1044 (2d Cir. 1996). The Court considers "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir. 1993). The court should not consider documents that are not attached to the complaint or incorporated by reference, but "New York federal courts routinely take judicial

notice of exculpation provisions in certificates of incorporation on motions to dismiss." *Spizz v. Eluz (In re Ampal-Am. Israel Corp.)*, 543 B.R. 464, 472 (Bankr. S.D.N.Y. 2016).

## ANALYSIS

### Whether Blatter Owes Fiduciary Duties Under the Operating Agreement

To plead a claim for breach of fiduciary duty under New York law, the Trustee must allege facts sufficient to demonstrate "(1) the existence of a fiduciary duty; (2) a knowing breach of that duty; and (3) damages resulting therefrom." *Schwartzco Enters. LLC*, 60 F. Supp. 3d at 352. Blatter's motion challenges only the first element, arguing that the Operating Agreement eliminates any fiduciary duties he might owe to Transfix.

Generally, a managing member of an LLC owes a fiduciary duty to the LLC, including the duty of care and the duty of loyalty. *Wen v. New York City Reg'l Ctr., LLC*, 695 F. Supp. 3d 517, 545 (S.D.N.Y. 2023), *aff'd*, No. 23-7506, 2024 WL 4180521 (2d Cir. Sep. 13, 2024); *accord DirecTV Latin America, LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 438 (S.D.N.Y. 2010). Under New York law, however, "LLC members are permitted to disclaim some of the most fundamental fiduciary obligations." *Barry v. Clermont York Assocs. LLC*, 28 N.Y.S.3d 647 (Sup. Ct. 2015) (table decision), *judgment entered* (Sup. Ct. 2016), *and aff'd as modified*, 42 N.Y.S.3d 123 (1st Dep't 2016); *see also Estrada v. Dugow*, No. 15-3189, 2016 WL 7017412, at *6 (S.D.N.Y. Nov. 30, 2016) ("LLC members are permitted to disclaim some of the most fundamental fiduciary obligations through disclaimers in operating agreements") (explaining New York LLCL).

At issue here is the scope of the exculpation provisions in the Operating Agreement. In reviewing this matter, the Court applies settled principles of contract law. *See HF Lexington KY LLC v. Wildcat Synergy Manager LLC*, 950 N.Y.S.2d 723 (Sup. Ct. 2012) (table decision) ("The company's operating agreement is a contract whose provisions are interpreted using the basic rules

of contract law. . . . The agreement must be construed as a whole, 'giving effect to all the provisions therein.'").

Blatter maintains that LLCL § 417(a) expressly permits the waiver of fiduciary and other duties by an LLC's manager, and that the Operating Agreement contains such a waiver. Motion at 7. As support, he points to Sections 4.7 and 5.11. *Id.* Section 4.7 states that "no Person, in such Person's capacity as a Member, shall have any duties or liabilities, including fiduciary duties, to the Company, any Member or any other Persons bound by this Agreement, and all such duties or liabilities are hereby irrevocably disclaimed and eliminated." Op. Agmt. § 4.7. Section 5.11 provides that Members are insulated from personal liability: "no Member shall have any personal liability whatsoever in such Member's capacity as a Member, whether to the Company, to any of the other Members, to the creditors of the Company or to any other third party, for the debts, liabilities, commitments or any other obligations (whether arising in contract, tort or otherwise) of the Company or for any losses of the Company." Op. Agmt. § 5.11. Blatter argues that together, those provisions effectively insulate him from the Claims.

The Trustee argues that the exculpation provisions in Section 4.7 applicable to Blatter's conduct do not shield him from liability for the numerous breaches of his fiduciary duties which he committed in his capacity as the Debtor's CEO. Oppn. at 7. She argues that instead, Section 4.5(c) imposes fiduciary duties on Blatter as an officer of the Debtor. *Id.* She maintains that as CEO, "Blatter owed the Company the duties to exercise the care, diligence and skill that a reasonably prudent person in like position would exercise under comparable circumstances and with a view to the Debtor's best interests." *Id.*

Based on the plain language of the Operating Agreement, the Court credits Blatter's analysis of the agreement. Section 4.7 contains two sentences addressing the limitation on duties

owed by a Member to the Company. The first sentence provides capacity-limited language: "To the maximum extent permitted by the NY LLC Law and applicable law, no Person, in such Person's capacity as a Member, shall have any duties or liabilities, including fiduciary duties, to [Transfix], any Member or any other Persons bound by this Agreement." Op. Agmt. § 4.7. The second sentence operates more broadly as it does not contain capacity-limited language: "The provisions of this Agreement, to the extent that they restrict or otherwise modify or eliminate the duties and liabilities, including fiduciary duties, of a Member otherwise existing at law or in equity, are agreed by the Members to replace any such other duties or liabilities of the Member." *Id*. This sentence establishes that the Agreement's provisions replace "any such other duties or liabilities of the Member" that might otherwise exist at law or in equity. *Id*.

The Operating Agreement identifies Blatter as both the "Managing Member" and a Member of Transfix. Under the plain language of the second sentence, the Operating Agreement's provisions replace duties and liabilities that Blatter might owe "as a Member," not merely duties arising from conduct undertaken "in his capacity as a Member." *See id*. The plain language of the Operating Agreement demonstrates Blatter remains a Member of Transfix regardless of any officer role he may have assumed.

The Trustee's attempt to impose officer fiduciary duties on Blatter runs afoul of the express requirements of Section 4.7's replacement provision. The Trustee seeks to restrict or modify Blatter's position under the Operating Agreement by imposing officer fiduciary duties where Section 4.7 eliminates Member duties entirely. This constitutes a restriction or modification of Blatter's liability protections as a Member. Under Section 4.7's plain language, any such restriction or modification of Member duties and liabilities must be "agreed by the Members." Op.

Agmt. § 4.7. The Trustee has alleged no facts demonstrating that the Members agreed to restrict

or modify Blatter's protections by imposing officer duties upon him.

In *In re Allianz Global Investors US LLC Alpha Series Litigation*, No. 20-10028, 2021 WL

4481215, at *23-24 (S.D.N.Y. Sep. 30, 2021) ("*Allianz*"), plaintiffs alleged breach of fiduciary

duty claims against defendants who served as investment managers under contractual

arrangements with specific duty provisions.[19] The defendants argued that section 2.07 of the LLC

agreement eliminated such claims because it "explicitly replaced any common-law fiduciary duties

owed to Plaintiffs with the Contractual Standard of Care in Section 2.12." *Id.* at *23. Section 2.07

provided: "to the fullest extent permitted by law, the provisions of this Agreement . . . to the extent

that they modify, restrict[,] or eliminate the duties (including fiduciary duties) and liabilities or

rights and powers of any person otherwise existing at law or in equity with respect to matters

expressly provided for in this Agreement, are agreed by the parties hereto to replace such other

duties and liabilities of such person." *Id.* The court found that "the plain language of Section 2.07

expressly replaces 'any other duties or liabilities' with those specified in the LLC Agreement" and

concluded that "where a dispute arises from obligations that are expressly addressed by contract,

that dispute will be treated as a breach of contract claim, and any fiduciary claims arising out of

the same facts that underlie the contract obligations would be foreclosed as superfluous." *Id.* at

*23-24.

The Trustee's reliance on Section 4.5(c) to establish Blatter's fiduciary duties as CEO

presents the similar issue addressed in *Allianz*. The Trustee argues that "section 4.5(c) of the

Operating Agreement imposes fiduciary duties on Blatter, as an officer of the Debtor" because that

---

[19] The case applied Delaware law, but the court found the principle applied is the same as under New York law.
*Allianz,* 2021 WL 4481215 at *22 ("the same is true under New York law") (also citing *Kagan*).

provision states "officers . . . shall owe to the Company duties of loyalty and due care of the type owed by the officers of a business corporation to such business corporation under corporate laws of the State of New York." Oppn. at 7; Op. Agmt. § 4.5(c). Section 4.5(c) incorporates external legal standards from New York corporate law to define officer duties, similar to how the *Allianz* plaintiffs sought to establish duties based on legal standards existing outside the specific contractual terms. The Operating Agreement contains a replacement provision in Section 4.7 stating: "The provisions of this Agreement, to the extent that they restrict or otherwise modify or eliminate the duties and liabilities, including fiduciary duties, of a Member otherwise existing at law or in equity, are agreed by the Members to replace any such other duties or liabilities of the Member." Op. Agmt. § 4.7. The *Allianz* court found that such replacement provisions operate to foreclose fiduciary claims where the contract expressly addresses the obligations in dispute. Here, Section 4.7 expressly addresses Member duties and liabilities, including those of Blatter as Managing Member. Following the *Allianz* court's interpretation, Section 4.7's replacement language operates to substitute the Operating Agreement's terms for these legal duties referencing external legal standards, preventing the Trustee from circumventing the Member protections by characterizing Blatter's conduct as officer conduct.

In *Farsura v. QC Terme US Corp.*, No. 21-9030, 2022 WL 4226266, at *8 (S.D.N.Y. Sep. 13, 2022), *on reconsideration in part*, 2022 WL 16838212 (S.D.N.Y. Nov. 8, 2022), section 7.08(b) of the operating agreement contained a section which provided: "To the fullest extent permitted by applicable law, this Agreement is not intended to, and does not, create or impose any fiduciary duties on the Members or their Affiliates (including the Board), other than (*in the case of the Board*) the duty of loyalty and the obligation to act in the best interests of the Company." The provision further stated: "except (*in the case of the Board*) with respect to the duty of loyalty

24

and the obligation to act in the best interests of the Company, to the fullest extent permitted by applicable law or equity, the Members and the Company hereby waive any and all fiduciary duties that, absent such waiver, may be implied by law or in equity." *Id.* The plaintiffs attempted to establish fiduciary duties by arguing that certain provisions "of the Operating Agreement 'impose separate duties of loyalty and good faith that apply regardless of any exculpation provision'" and that the defendant "owes fiduciary duties as a controlling shareholder." *Id.* The defendants argued that they "did not owe Plaintiffs any fiduciary duties because § 7.08(b) explicitly waived the fiduciary duties Plaintiffs assert." *Id.* The court rejected the plaintiffs' argument, finding that "the obligations set forth in [certain provisions of the operating agreement] are based in contract; they do not establish separate fiduciary duties" because "the Members . . . acknowledge and agree that their duties and obligations to one another and to [the LLC] are only as expressly set forth" in the operating agreement. *Id.* at *9.

The *Farsura* court's analysis supports reading Section 4.7 to bar the Trustee's fiduciary duty claims against Blatter. The Trustee's argument that Section 4.5(c) creates independent officer fiduciary duties mirrors the unsuccessful strategy in *Farsura*, where plaintiffs pointed to specific contractual provisions imposing duties of loyalty and good faith to circumvent the general fiduciary duty waiver. *See id.* at *8-9. The *Farsura* court determined that such contractual obligations "do not establish separate fiduciary duties" when the operating agreement contains express language limiting member duties to those "only as expressly set forth in th[e Operating] Agreement." *Id.* at *9. Similarly, Section 4.7 provides that the Operating Agreement's provisions "replace any such other duties or liabilities of the Member" and that Members shall have no "duties [or] liabilities, including fiduciary duties" to the Company. Op. Agmt. § 4.7. In other words,

Trustee's attempt to invoke Section 4.5(c) to establish officer obligations when Section 4.7 expressly eliminates Member duties, is foreclosed.

In *Trahan v. Lazar*, 457 F. Supp. 3d 323 (S.D.N.Y. 2020), the court addressed whether provisions in a limited partnership agreement could eliminate fiduciary duties while simultaneously imposing officer duties. The plaintiff managing partner alleged that limited partners breached fiduciary duties based on their partnership relationship, while defendants argued that section 7.2 of the Limited Partnership Agreement ("LPA") eliminated such duties. *Id.* at 346-47. Section 7.2 provided that "the provisions of this Agreement to the extent they restrict, limit or eliminate the duties (including, without limitation, fiduciary duties) or liability of a Covered Person that may otherwise exist at law or in equity, shall replace such other duties and liabilities of such Covered Person to the maximum extent permitted by applicable law." *Id.* at 347. The court found this provision "merely provides that other provisions of the agreement may modify existing duties, including fiduciary duties. It does not by itself modify these duties." *Id.* The court determined that only section 7.9 actually modified existing duties, and that section "applies only to duties owed by the General Partner, not the Limited Partner Defendants." *Id.* Therefore, the LPA failed to eliminate the Limited Partner Defendants' fiduciary duties because it lacked specific elimination language. *Id.*

Unlike the LPA in *Trahan*, which contained only a general replacement provision without specific elimination language, Section 4.7 contains express elimination language: "no Person, in such Person's capacity as a Member, shall have any duties or liabilities, including fiduciary duties, to [Transfix], any Member or any other Persons bound by this Agreement." Op. Agmt. § 4.7. This directly eliminates duties rather than merely authorizing modification, providing the specific elimination provision that the *Trahan* court found lacking. Moreover, Section 4.7's second

26

sentence operates as the replacement provision: "The provisions of this Agreement, to the extent that they restrict or otherwise modify or eliminate the duties and liabilities, including fiduciary duties, of a Member otherwise existing at law or in equity, are agreed by the Members to replace any such other duties or liabilities of the Member." *Id.* The *Trahan* court's analysis supports rejecting the Trustee's attempt to circumvent member protections through officer designation, as *Trahan* found a court must give "maximum effect to the principle of freedom of contract' so the "analysis here must focus on, and examine, the precise language of the [operating agreement] that is at issue in this case." *Trahan*, 457 F. Supp. 3d at 346-47.

The Trustee brings this action pursuant to her appointment under section 704 of the Bankruptcy Code, which authorizes a trustee to pursue claims belonging to the debtor's estate for the benefit of creditors. 11 U.S.C. § 704. The Trustee's authority extends only to claims that the debtor corporation itself could have brought against Blatter prior to bankruptcy. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("Under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy. . . . It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself.") (citations omitted).

The Trustee, standing in the Company's shoes, seeks to hold Blatter liable for conduct allegedly undertaken as CEO rather than as Managing Member. The Trustee's position would require the Court to find that Transfix itself could have pursued fiduciary duty claims against its own Managing Member despite the Trustee not alleging facts showing the Operating Agreement imposed on Blatter officer duties beyond those eliminated under Sections 4.7 and 5.11. This legal theory lacks foundation because the Company bound itself to the Operating Agreement's terms,

including the elimination of Member duties under Sections 4.7 and 5.11. The relationship between

Transfix and Blatter is governed by the Operating Agreement, and following *Allianz*, *Farsura*,

and *Trahan*, the Trustee cannot circumvent Operating Agreement merely by characterizing Blatter

acted in officer capacity. The Trustee has cited no authority permitting a debtor LLC, through its

bankruptcy trustee, to pursue fiduciary duty claims against a member based on conduct in an

officer capacity where the operating agreement eliminates member duties. The Court is unaware

of any such precedent.

Under the Rule 12(b)(6) standard, the Trustee fails to allege a plausible claim for breach of

fiduciary duty under the Complaint because in misplacing her reliance on Section 4.5(c) she fails

to allege facts demonstrating that under the Operating Agreement, Blatter owed fiduciary duties

to the Debtor. By its terms, Section 4.7 removes any fiduciary duties Blatter might otherwise owe

under the Operating Agreement, and the Trustee's attempt to establish separate officer duties

through Section 4.5(c) runs afoul of the plain language of the agreement and the reasoning

established in the above precedents.

**Whether the Complaint States Actionable Claims Despite Exculpation Provisions**

LLCL § 417(a) provides that while an operating agreement "may set forth a provision

eliminating or limiting the personal liability of managers to the limited liability company or its

members for damages for any breach of duty in such capacity" there are exceptions in that no such

provision shall eliminate or limit:

> (1) the liability of any manager if a judgment or other adjudication adverse to
> him or her establishes that his or her acts or omissions were in bad faith or
> involved intentional misconduct or a knowing violation of law or that he or she
> personally gained in fact a financial profit or other advantage to which he or she
> was not legally entitled . . . .

LLC § 417(a)(1). The Trustee contends that even if the Operating Agreement's exculpation provisions would otherwise shield Blatter from liability, by application of section 417(a)(1), Blatter is nonetheless accountable to the Debtor and its creditors, for conduct committed "in bad faith or involv[ing] intentional misconduct or a knowing violation of law." Oppn. at 10. The Trustee maintains that the Complaint "more than sufficiently alleges that Blatter committed actions and omissions in bad faith and/or engaged in intentional misconduct which, if proven, would result in a final adjudication that would fall within the . . . exception to exculpation under LLCL § 417(a)." *Id.* at 11. She argues that her "detailed allegations of Blatter's conduct raise factual issues that require discovery and adjudication by the Court and are not susceptible to dismissal at this early stage of litigation." *Id.*

Blatter denies that the Trustee has alleged facts demonstrating grounds for relief under section 417(a). He argues that the Complaint fails to invoke the phrase "bad faith" and that the facts alleged do not support even a reasonable inference of bad faith conduct. Reply at 8. He contends that the Complaint's labels of his behavior as "intentional," "reckless," and "knowing" are not supported by facts and constitute conclusory allegations that do not allege bad faith behavior. *Id.* at 9. Blatter maintains that to plead facts sufficient to allege "bad faith" so as to overcome the waiver and exculpation clauses of the Operating Agreement, the Trustee must allege facts giving rise to the inference that his actions were motivated by an "improper purpose." *Id.* at 8. He asserts that the Complaint is "completely devoid of any mention, let alone any direct or even implied assertion, of a motive or improper purpose by him for the allegedly 'intentional,' 'reckless,' and 'knowing' conduct of which the Trustee accuses him." *Id.* at 8-9.

The Court credits Blatter's argument. The Complaint fails to satisfy the pleading standards under *Iqbal*, 556 U.S. at 678. The Complaint repeatedly employs conclusory legal labels without

providing supporting factual content. The Complaint alleges that Blatter committed "intentional, extremely reckless and grossly negligent acts and omissions" and that he "intentionally" caused various failures and breaches. Complaint ¶¶ 23, 56. These allegations constitute legal conclusions rather than factual allegations entitled to the presumption of truth under *Iqbal*. However, more significantly, as a matter of law, even if established, the Trustee's allegations regarding Blatter's business decisions and lack of business judgment, fail to state grounds for relief under section 417(a). The following case law is instructive.

In *Kagan v. HMC-New York, Inc.*, 939 N.Y.S.2d 384 (1st Dep't 2012), the First Department addressed whether Delaware law[20] permitted the elimination of traditional fiduciary duties through operating agreement provisions. The plaintiff alleged breach of contract and breach of fiduciary duty claims arising from defendants' alleged failure to properly calculate and distribute monies owed under LLC agreements. *Id.* at 387. The defendants argued that the operating agreement's limitation of liability provision precluded the claims. The agreement limited manager liability to specific circumstances involving "intentional misconduct, a knowing violation of the law, gross negligence and self-dealing." *Id.* The First Department affirmed dismissal of the fiduciary duty claims, finding that "when 'the same facts that underlie [a plaintiff's] contract claim also form the basis of plaintiff's fiduciary claim, the fiduciary claim is precluded.'" *Id.* The court emphasized that "the plaintiff simply does not make any allegations at all that fall within the exclusions of the liability limitation provision" and that "a breach of contract claim is not an allegation of intentional misconduct, knowing violation of law, gross negligence or self-dealing." *Id.*

---

[20] Although the Court applies New York law, cases interpreting Delaware law offer guidance on contractual interpretation principles where operating agreements contain similar language.

In *TIC Holdings, LLC v. HR Software, Acquisition Grp., Inc.*, 750 N.Y.S.2d 425, 432 (Sup. Ct. 2002), *aff'd sub nom. TIC Holdings, LLC v. HR Software Acquisitions Grp., Inc.*, 755 N.Y.S.2d 19 (1st Dep't 2003), the plaintiff alleged that the defendant manager breached his fiduciary duty by "attempting to gain a prospective economic advantage with respect to TIC; failing to advise TIC and its members of his conflicts of interest; creating a situation in which he was interested primarily against TIC; failing to protect TIC's interests in its negotiations with HRSAG; and improperly purporting to execute the Note Purchase Agreement on TIC's behalf." *TIC Holdings*, 750 N.Y.S.2d at 432. The plaintiff also alleged that the defendant "has intentionally interfered with TIC's ability to obtain financing." *Id.* The court found that these claims "could potentially result in an adjudication adverse to [defendant], which establishes that his acts were in bad faith, or involved intentional misconduct, or a knowing violation of the LLCL" and therefore denied defendant's motion for dismissal based on exculpation provisions. *Id.* On appeal, the First Department affirmed, finding that "the complaint sufficiently alleges intentional wrongdoing and bad faith to render the cited exculpatory and indemnification provisions ineffective under both longstanding general common-law principles and the specific governing statutes." *TIC Holdings*, 755 N.Y.S.2d at 20.

In *Agarwal v. Jain*, No. 650333/2024, 2024 WL 3433747, at *3 (N.Y. Sup. Ct. July 12, 2024), the plaintiff alleged that defendants "effectively conspired to gut Szul's revenue by providing 'sweetheart' arrangements to competitors and by covertly working for these competitors." The court found that "such acts 'could potentially result in an adjudication adverse to defendants . . . establish[ing] that [their] acts were in bad faith, or involved intentional misconduct'" and concluded that "[t]he allegations sound of intentional misconduct by [defendants]." *Id.* The court distinguished the case from situations involving mere business

decisions, finding specific allegations of conspiratorial conduct and self-dealing that supported an inference of bad faith.

In *Orange Gowanus LLC v. PCLING LLC*, No. 537850/2023, 2024 WL 2023485, at \*3 (N.Y. Sup. Ct. May 7, 2024), the court analyzed an operating agreement that exculpated the managing member from liability for "errors in judgment or for any acts or omissions" within the managing member's scope of authority unless such act or omission was determined by a final judgment to have resulted from "fraud, gross negligence, misappropriation of funds or theft." The court found that while the operating agreement barred suit against the manager "for mere intentional tortious conduct that does not involve fraud, theft, or misappropriation of funds," the complaint adequately alleged misconduct that could constitute gross negligence, which the court noted "may consist of intentional conduct." *Id.* The court emphasized that "gross negligence is defined as a failure to use even slight care or involves conduct that is so careless as to demonstrate a complete disregard for the rights of others." *Id.*

In *Crestview SPV, LLC v. Crestview Financial, LLC*, 191 N.Y.S.3d 361, 363 (1st Dep't 2023), the operating agreement's exculpation provision stated that "in no event shall any Indemnified Party who is an individual have any personal liability to the Company, except to the extent the loss or damage is attributable to such Indemnified Party's actual and intentional fraud." *Id.* The First Department affirmed dismissal of claims against the individual defendant, finding "there was nothing wrongful about defendant's exercise of dominion and control over the proceeds of the accounts receivable." *Id.* at 364. The court noted that "no independent facts are alleged giving rise to tort liability" beyond mere breach of contract. *Id.*

In contrast to the allegations in *TIC Holdings* of self-dealing, conflicts of interest, and attempts to gain prospective economic advantage, or the allegations in *Agarwal* of conspiratorial

conduct to divert company revenue to competitors, here, the Complaint alleges only business decisions that resulted in financial losses. The Trustee complains of Blatter "recklessly failing to set or adhere to any budgetary controls" and "intentionally causing Transfix to incur extremely excessive expenses" when "he knew that Transfix did not have anywhere near sufficient capital to pay for same." Complaint ¶ 56. The Complaint alleges that Blatter "grossly overestimate[d] the number of tickets Transfix would be able to sell" and "knowingly arrang[ed] on a continued basis for extreme overstaffing for the event notwithstanding the extremely poor ticket sales." *Id.* The Complaint simultaneously alleges that Blatter projected 3,000 ticket sales per night while actual sales ranged from 200 to 800 per night. *Id.* The Complaint alleges that Blatter "intentionally fail[ed] to disclose to numerous of the employees and contractors whom he had continuing to work at the exposition that Transfix did not have sufficient funds to pay them for their ongoing services." *Id.* Even if true, these allegations fall short of the claims in *TIC Holdings* and *Agarwal* that supported an inference of bad faith or intentional misconduct. Like the plaintiff in *Kagan*, the Trustee "simply does not make any allegations at all that fall within the exclusions of the liability limitation provision." *Kagan*, 939 N.Y.S.2d at 387. In *Crestview*, the court found that allegations constituting "mere breach of contract" without "independent facts" giving rise to tort liability were insufficient to overcome an exculpation provision requiring "actual and intentional fraud." *Crestview*, 191 N.Y.S.3d at 364. Similarly, the Complaint here alleges conduct that, at most, constitutes breach of business obligations without the additional factual content necessary to establish bad faith or intentional misconduct under LLCL § 417(a). The conduct alleged here— budgetary failures, overstaffing, and poor financial planning—constitutes business decisions that, while perhaps misguided, do not rise to the level of conduct that would satisfy any of the statutory exceptions under LLCL § 417(a)(1). This also means the Complaint fails to overcome the

Operating Agreement's indemnification provisions[21] because the Trustee failed to allege facts satisfying Section 8.1's exceptions.

Section 4.1 of the Operating Agreement vests management authority exclusively in the Managing Member, providing that "the powers, business and affairs of the Company shall be managed, operated and controlled exclusively by or under the direction of the Managing Member." Op. Agmt. § 4.1. This Section grants the Managing Member "full and complete power, authority and discretion for, on behalf of and in the name of the Company, to take such actions as they may in their sole discretion deem necessary or advisable," including specifically the authority to "appoint and replace officers and other representatives of the Company and delegate any or all of its management powers hereunder to such Persons." *Id.* § 4.1(b).

The conduct alleged in the Complaint appears to fall within the scope of authority granted to the Managing Member under Section 4.1. The Complaint alleges that Blatter "failed to adhere to budgetary controls," "caused Transfix to incur excessive expenses," made "grossly unrealistic estimates of ticket sales," and engaged in "severe overspending." Complaint ¶¶ 24-34. Section 4.1 expressly grants the Managing Member authority over these activities, including the power to "manage the general business and affairs of the Company," "incur, assume or guarantee any indebtedness," "authorize and set compensation for the officers, employees and consultants," and "undertake or approve any changes to the accounting methods or material accounting policies." Op. Agmt. §§ 4.1(a), (c), (f), (h). And these allegations alone do not support an inference that

---

[21] Section 8.1 defines "Indemnitees" to include "the Managing Member and each officer of the Company," thereby encompassing Blatter regardless of his capacity. Op. Agmt. § 8.1. Section 8.8 provides that "no Indemnitee shall have personal liability to the Company or the Members for monetary damages for breach of such Indemnitee's fiduciary duties (if any) or for any act or omission performed or omitted by such Indemnitee in good faith on behalf of the Company." Op. Agmt. § 8.8. The provision explicitly protects against "breach of such Indemnitee's fiduciary duties (if any)." Section 8.1 also states that "no Indemnitee may be indemnified by the Company from and against any losses or liabilities which result from the gross negligence, willful misconduct, fraud or violation of law of or by such Indemnitee." Op. Agmt. § 8.1.

Blatter's conduct was motivated by an improper purpose or support an inference of intentional misconduct. *See Barry*, 28 N.Y.S.3d 647 ("managing member does not run afoul of his contractual and fiduciary obligations, his business decisions cannot be questioned, either by non-managing members or the court"); *see also HF Lexington KY LLC,* 950 N.Y.S.2d 723 ("factual allegations of the Complaint before me, even if true, support only a conclusion that the managing member of Wildcat Equities made a 'poor business decision,' a decision which is protected from judicial oversight by the business judgment rule").

## **CONCLUSION**

Having determined that Section 4.7 precludes the Trustee's attempt to establish fiduciary duty claims against Blatter based on his purported officer capacity, and that the Complaint fails to allege facts sufficient to overcome exculpation provisions under LLCL § 417(a), the Court concludes that the Complaint fails to state actionable claims. Because, as to the latter, the Complaint's deficiencies relate to the sufficiency of factual allegations rather than legal impossibility, dismissal is without prejudice.

In accordance with Mediation Stipulation, the Parties shall arrange with the Mediator a mutually agreeable date and time upon which the mediation between the Parties shall resume. The Court will hold a pre-trial conference on July 8, 2025 at 11:00 a.m. The parties shall file a joint status report on or before July 1, 2025 with two single sided hard copies mailed to Chambers.

IT IS SO ORDERED.

Dated:  June 13, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

35