| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | NOT FOR PUBLICATION |
| ------------------------------------------------------------------x | | |
| In re: | : | Chapter 7 |
|     Transfix Productions LLC, | : | |
| | : | |
|                         Debtor. | : | Case No. 23-11283 (JLG) |
| ------------------------------------------------------------------x | | |
| Deborah J. Piazza, as Chapter 7 Trustee<br>of Transfix Productions LLC, | :<br>: | |
| | : | |
|                         Plaintiff, | : | |
| | : | |
| v. | : | Adv. P. No.: 24-04040 (JLG) |
| | : | |
| Michael Blatter, | : | |
| | : | |
|                         Defendant. | : | |
| ------------------------------------------------------------------x | | |

**MEMORANDUM DECISION AND ORDER GRANTING THE
CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY
RULE 9019 FOR APPROVAL OF SETTLEMENT BETWEEN THE
<u>TRUSTEE AND DEFENDANT MICHAEL BLATTER</u>**

**A P P E A R A N C E S :**

TARTER KRINSKY & DROGIN LLP
*Counsel to the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, NY 10018
By:   Robert A. Wolf
         Jacob B. Gabor

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

# INTRODUCTION[1]

The matter before the Court is the motion (the "Motion")[2] of Deborah J. Piazza (the "Trustee"), the chapter 7 trustee of the Debtor's estate. The Trustee seeks an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019") approving the stipulation of settlement (the "Settlement Stipulation")[3] between the Trustee, as plaintiff, and Michael Blatter ("Blatter"), as defendant, resolving this adversary proceeding (the "Adversary Proceeding"). There were no responses filed to the Motion. The Court did not conduct a hearing on the Motion and is considering this matter based upon the papers submitted. For the reasons set forth herein, the Court grants the Motion.

# JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] Capitalized terms shall have the meanings ascribed to them herein or in the Operating Agreement. References to "ECF No.__" are to documents filed on the electronic docket of the Debtor's chapter 7 case, Case No. 23-11283. References to "AP ECF No.__" are to documents filed on the electronic docket of this Adversary Proceeding, Adv. Pro. No. 24-04040.

[2] *Chapter 7 Trustee's Motion Pursuant to Bankruptcy Rule 9019 for Approval of Settlement Between the Trustee and Defendant Michael Blatter*, AP ECF No. 21.

[3] The Settlement Stipulation is attached to the Motion as Exhibit A.

2

## BACKGROUND

**The Debtor**

On August 11, 2023 (the "Petition Date"), Transfix Productions LLC ("Transfix" or the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court.[4] Ms. Piazza was appointed as interim trustee and thereafter qualified as the chapter 7 trustee of the Debtor's estate. She continues to serve in that capacity.

Transfix is a New York limited liability company (an "LLC"). As of the Petition Date, Blatter was a member of Transfix and served as its Chief Executive Officer ("CEO"). At that time, Transfix, Blatter and the other members of Transfix were bound by that certain Amended and Restated Operating Agreement of Transfix Productions, LLC, dated February 1, 2023 (the "Operating Agreement").[5]

**The Insurance Policy**[6]

As of the Petition Date, the Debtor was party to a Directors & Officer's Liability and Corporate Securities Liability insurance policy (the "Policy") issued by Scottsdale Insurance Company, on behalf of Nationwide (the "Insurer"). The Policy includes a Directors and Officers and Company Coverage Section. That section provides a Limit of Liability of $1,000,000 aggregate for all "Loss" and $1,000,000 additional aggregate for all Loss under Insuring Clause A.1. Loss is defined to include the "Costs, Charges and Expenses" incurred by Directors and Officers under Insuring Clauses 1. or 2. Costs, Charges and Expenses are defined to include

---

[4] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.

[5] The Operating Agreement is annexed to the Complaint as Exhibit 2.

[6] The facts regarding the Policy are set forth in Blatter's *Motion For Relief From The Automatic Stay To The Extent Applicable*, ECF No. 46 (the "Blatter Stay Relief Motion"). In describing the Policy, the Court takes judicial notice of those facts herein.

3

reasonable and necessary legal costs, charges, fees and expenses incurred by any of the Insureds in defending "Claims." Any and all advancements or payments by Nationwide on account of Costs, Charges and Expenses shall reduce the Policy's Limits of Liability in a like amount to the extent permitted under the terms and conditions of the Policy, unless or until such amounts are repaid to Nationwide.

On November 28, 2023, under the Policy, the Trustee, on behalf of Debtor, submitted a notice of claims that the Debtor allegedly possesses against Blatter, as the Founder and former CEO of Transfix. The claims are for damages caused by Blatter's alleged intentional, reckless, and grossly negligent actions and omissions committed by him in breach of his fiduciary duties as Transfix's CEO (the "Blatter Claim Notice").

Blatter is an "Insured" under the Policy, and the Blatter Claim Notice is a "Claim" under the Policy that seeks damages for alleged "Wrongful Acts" by Blatter. On May 31, 2024, Blatter, by and through his counsel, filed the Blatter Stay Relief Motion[7] pursuant to section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001(a) for relief from the automatic stay to the extent applicable, for the purpose of the advancement and/or payment of certain Costs, Charges and Expenses under the Policy. The motion was unopposed. On July 8, 2024, the Court granted the motion[8] and authorized payment of Blatter's defense costs to the extent permitted under the Policy.

**The Mediation**

In an effort to achieve consensual resolution of the Trustee's claims set forth in the Blatter Claim Notice, and Blatter's defenses thereto (the "Dispute"), the Trustee and Blatter (the "Parties")

---

[7] *Motion For Relief From The Automatic Stay To The Extent Applicable*, ECF No. 46.

[8] *Order Granting Motion of Michael Blatter for Relief from the Automatic Stay, to the Extent Applicable*, ECF No. 48.

4

agreed to mediate the Dispute. On October 23, 2024, the Court approved a stipulation among the Parties authorizing and directing the mediation of the Dispute, and appointing a mediator (the "Mediator").

On November 7, 2024, the Mediator conducted an initial mediation session of the Dispute with the Parties. At the conclusion of that session, the Dispute remained unresolved. *See* Mediation Stipulation ¶¶ B, C.[9] The Parties agreed to stay the mediation pending the Trustee's commencement of an adversary proceeding against Blatter by filing a complaint against Blatter asserting the claims set forth in the Blatter Claims Notice. *Id.* ¶¶ 1, 4. They further agreed that Blatter would promptly file a motion to dismiss the complaint, and that upon resolution of the motion, the Parties would arrange with the Mediator a mutually agreeable date and time upon which the mediation between the Parties would resume. *Id.* ¶¶ 2, 4. They also agreed to stay any discovery pending the Court's resolution of the motion to dismiss. *Id.* ¶ 3.

**The Adversary Proceeding**

*The Complaint*

On December 6, 2024, the Trustee filed a complaint (the "Complaint")[10] commencing the Adversary Proceeding. The gravamen of the Complaint is that under section 4.5(c) of the Operating Agreement, Blatter is liable to the estate for substantial damages occasioned by his alleged multiple intentional, extremely reckless and grossly negligent actions and omissions committed by him in his capacity as Debtor's CEO, in bad faith and in breach of the fiduciary duties which he owed to the Debtor and to its creditors. The Trustee contends that while acting as

---

[9] *See Stipulation and Order Regarding Contemplated Adversary Proceeding and Further Mediation*, ECF No. 66 (the "Mediation Stipulation").

[10] *Complaint,* AP ECF No. 1.

5

CEO, Blatter owed Transfix fiduciary duties to exercise the care, diligence and skill that a reasonably prudent person in like position would exercise under comparable circumstances, and with a view to Transfix's best interests. Complaint ¶ 54. She also maintains that based on the fact that Transfix was insolvent during the six-month period leading to the Petition Date, Blatter also owed fiduciary duties to Transfix's numerous creditors, and was bound to take reasonable steps to preserve Transfix's assets for the benefit of said creditors. *Id*. ¶ 55.

The Trustee maintains that Blatter "consistently breached" these duties by committing "intentional, extremely reckless and grossly negligent acts and omissions in his conduct of Transfix's financial and related affairs." *Id*. ¶ 56. She asserts that as a result of Blatter's alleged breaches of his fiduciary duties owed to Transfix and to Transfix's creditors, dozens of those creditors have filed timely claims against the Debtor's estate in an aggregate amount which exceeds $8.1 million. *Id*. ¶ 57. She argues that Blatter's alleged breaches of his fiduciary duties have damaged the Debtor's estate in an amount in excess of $8.1 million, and that she is entitled to judgment against Blatter in an amount to be determined at trial, currently estimated to be in excess of $8.1 million, plus interest and costs. *Id*. ¶¶ 58-59.

***The Motion to Dismiss***

On January 13, 2025, Blatter filed his Motion to Dismiss the Complaint.[11] Blatter is the "Managing Member" of Transfix. There is no dispute that New York law applies in this case. To plead a claim for breach of fiduciary duty against Blatter under New York law, the Trustee must allege facts sufficient to demonstrate "(i) the existence of a fiduciary duty; (ii) a knowing breach

---

[11] *Motion by Defendant Michael Blatter to Dismiss the Complaint*, AP ECF No. 7.

6

of that duty; and (iii) damages resulting therefrom." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014).

Briefly, in support of the Motion, Blatter argued that the Court must dismiss the Complaint because, as a matter of law, the Trustee cannot demonstrate Blatter owed fiduciary duties to Transfix or its creditors. Motion at 6. He contended that while the general rule under New York law is that a managing member of an LLC owes the traditional fiduciary duties of care and loyalty to the company, section 417(a) of the New York Limited Liability Company Law ("LLCL § 417(a)") expressly permits the waiver of fiduciary and other duties by an LLC's manager. He says that Transfix waived Blatter's fiduciary duties pursuant to sections 4.7 and 5.11 of the Operating Agreement. *Id.* at 7-8.

Moreover, he argued that the Trustee misplaced her reliance on section 4.5(c) of the Operating Agreement, in attempting to plead around the clear import of the "No Fiduciary Duties" waiver and Member liability limitation clauses by characterizing Blatter as having acted solely as an "officer" of Transfix, because he also outwardly used a CEO title. *Id.* at 8 (citing Complaint ¶¶ 6, 53-54). He argued that the "entirety" of the Operating Agreement shows that Blatter was, in fact, the Managing Member of Transfix, and not merely Transfix's CEO. *Id.* Finally, Blatter argued that, assuming arguendo, that it was determined that he was solely the CEO of Transfix, section 8.8 nonetheless would exculpate him from personal liability because, by application of section 8.1, he is an "Indemnitee." *Id.* at 9.

7

*The Order*

The Court granted the Motion to Dismiss without prejudice (the "Order").[12] In broad strokes, the Court determined that the Complaint failed to allege facts to support a plausible claim for relief because she failed to allege facts demonstrating that Blatter owed a fiduciary duty to the Debtor or breached such duty. The Court found that the Trustee's attempt to impose officer fiduciary duties on a Member was precluded because the Operating Agreement eliminates Member duties entirely. Order at 22-24. Because the agreement provides that its terms replace any other Member duties, the Court found it barred "the Trustee from circumventing the Member protections by characterizing Blatter's conduct as officer conduct." *Id*. at 24. The Court further found that, based on the facts alleged in the Complaint, Blatter's alleged conduct "fall[s] within the scope of authority granted" to a Managing Member under the Operating Agreement, not as Transfix's CEO. *Id.* at 34.

The Court concluded that, because the Trustee did not allege Blatter committed bad faith, intentional misconduct, or a knowing violation of the law, she had failed to allege facts demonstrating an exculpation exception applies. *Id*. at 28-29. The Court further noted that, even if she had included factual support, the Trustee failed to state grounds for relief as a matter of law, because the alleged conduct—"budgetary failures, overstaffing, and poor financial planning"— constitute business decisions and do not satisfy the exceptions under LLCL § 417(a) or the Operating Agreement's indemnification provisions. *Id*. at 29-33.

---

[12] *Memorandum Decision and Order Resolving Defendant's Motion to Dismiss*, AP ECF No. 12.

*The Appeal*

The Trustee filed an appeal of the Order (the "Appeal") in the United States District Court for the Southern District of New York (the "District Court").[13] In the designation of record on appeal (the "Designation"),[14] the Trustee states the issues to be presented on appeal are

> 1. Did the Bankruptcy Court err in characterizing the defendant-appellee [Blatter's] actions and omissions that are the subject of the . . . Complaint as ones undertaken in his capacity as a Managing Member of the [Debtor], rather than ones undertaken in his capacity as the Chief Executive Officer of the Debtor?
>
> 2. Did the Bankruptcy Court thus err in dismissing the . . . Complaint against Blatter based on the exculpation provisions . . . , rather than finding that Blatter, in his performance of the aforesaid actions and omissions as the Debtor's CEO, was subject to . . . fiduciary duties upon the Debtor's officers, including the duties of loyalty and due care?
>
> 3. Did the Bankruptcy Court err in finding that the Trustee's Complaint did not contain allegations supporting an inference of gross negligence, bad faith and/or intentional misconduct on Blatter's part . . . ?

Designation at 3-4. The District Court has extended the Trustee's time to file an appellate brief to October 31, 2025.[15]

**The Settlement**

The Settlement Stipulation calls for the Insurer to pay to the Trustee the amount of $225,000 in full settlement of the Trustee's claim against Blatter within thirty calendar days after the Court's entry of an order approving the Settlement Stipulation, as well as $20,000 to cover the entirety of the Mediator's fees and expenses to be paid upon the execution of the Settlement

---

[13] *Notice of Appeal*, AP ECF No. 13; Appeal ECF No. 1. References to "Appeal ECF No. __" are to the electronic docket of the Appeal, *Piazza v. Blatter*, Case No. 1:25-CV-05750 (S.D.N.Y. July 11, 2025).

[14] *Appellant's Designation of Items to be Included in Record on Appeal and Statement of the Issues to be Presented*, AP ECF No. 14; Appeal ECF No. 3.

[15] *See Order Granting Letter Motion for Extension of Time to File*, Appeal ECF No. 9.

9

Stipulation. Settlement Stipulation ¶¶ 2-3. The Settlement Stipulation is to be in "full and final disposition" of the Adversary Proceeding and it is the intention of the Parties that the Settlement Stipulation shall eliminate all further litigation, risk and liability relating to the Adversary Proceeding, including all disputes asserted or which could have been asserted between the Parties. *Id*. ¶ 5. Once the Settlement Stipulation is approved, the Trustee shall file a stipulation discontinuing the Adversary Proceeding and a notice with the District Court withdrawing the Appeal. *Id*. ¶ 7. The Parties agree not to make public negative comments or publicly disparage one another with respect to the subject matter of the Settlement Stipulation. *Id*. ¶ 9.

**The Motion**

The Trustee states that, in deciding whether to approve a proposed settlement, the Court must determine whether the proposal is "fair and equitable" and "in the best interests of the estate." Motion ¶ 18 (citing *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991); *In re Texaco*, 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988); *In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985)). She maintains that "[a] court need not conduct an independent investigation in formulating its opinion as to the reasonableness of a settlement." *Id*. ¶ 19 (citing *Off. Comm. of Unsecured Creditors v. James Talcott, Inc. (In re Int'l Distrib. Ctrs., Inc.)*, 103 B.R. 420, 422-23 (S.D.N.Y. 1989); *In re Best Products Co.,* 168 B.R. 35, 50-51 (Bankr. S.D.N.Y. 1994), *aff'd*, 69 F.3d 26 (2d Cir. 1995)). She asserts that the Court need only determine whether the settlement falls below the lowest point in the range of reasonableness. *Id*. (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 613 (2d Cir. 1983); *In re Drexel*, 134 B.R. at 497).

The Trustee contends that the Settlement Stipulation meets these standards. She says that, in agreeing to the Settlement Stipulation, she took into consideration potential obstacles that she

10

would face in prosecuting the Adversary Proceeding. Motion ¶ 21. She considered (i) the substantial legal expenses she would incur, (ii) the fact that Blatter indicated he will move to dismiss the Appeal on the grounds that the Order is not a final appealable order, and (iii) that if she decided to amend the Complaint, there is no guaranty that she would successfully prosecute an amended complaint. *Id*. Further, she maintains that, even were an amended complaint to survive "another anticipated motion to dismiss from Blatter," there would still be a significant amount of discovery and likely a trial on the merits of the Complaint without the guarantee of success. *Id*. She also notes that, if successful, any recovery under the Policy by the Trustee would be reduced by the amount of legal expenses Blatter would incur in defending such litigation. *Id*. The Trustee, in the exercise of her business judgment, has concluded that entering the Settlement Stipulation with Blatter rather than proceeding with more litigation represents the most beneficial and economically practical result for the Debtor's estate.

## **LEGAL PRINCIPLES**

Pursuant to Rule 9019, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).[16] "Settlements are generally favored in bankruptcy because they 'minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *In re Allard*, No. 18-14092, 2021 WL 2546668, at *6 (Bankr. S.D.N.Y. June 21, 2021) (quoting *HSBC Bank USA v. Fane (In re MF Glob. Inc.)*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012)).

To approve a settlement under Rule 9019, the Court must find that the settlement "is fair and equitable and in the best interests of the estate." *In re Charter Commc'ns*, 419 B.R. 221, 252

---

[16] The Court's authority to approve a settlement under Rule 9019 is pursuant to section 105 of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 105(a) grants the Court authority "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

11

(Bankr. S.D.N.Y. 2009) (citing *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968)). The settlement proponent bears the burden of persuading the Court that the settlement is in the best interests of the estate. *In re MF Glob. Inc.*, No. 11-2790, 2012 WL 3242533, at *6 (Bankr. S.D.N.Y. Aug. 10, 2012).

When evaluating a proposed settlement, the Court must make an independent inquiry of the facts, to make "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and "should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment." *TMT Trailer Ferry, Inc.*, 390 U.S. at 424. However, the Court need not conduct a "mini trial" of the underlying merits, and should consider the business judgment of the Trustee and the general public policy favoring settlements. *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005); *O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*, No. 08-12547, 2013 WL 1821592, at *4 (Bankr. S.D.N.Y. Apr. 30, 2013) ("A court may exercise its discretion 'in light of the general public policy favoring settlements.' In evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement, and the professionals." (quoting *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998)).

The Court's responsibility "is not to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d at 608 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *accord In re Stearns Holdings, LLC*, 607 B.R. 781, 793 (Bankr. S.D.N.Y. 2019) (the standard for approval under Rule 9019 is whether the settlement "falls above the lowest point in the range of reasonableness").

In this district, in assessing whether a settlement is fair and equitable, courts apply the factors outlined by the Second Circuit in *Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC),* 478 F.3d 452, 455 (2d Cir. 2007) (the "Iridium Factors"). *See Nuevo Pueblo, LLC v. Napolitano (In re Nuevo Pueblo, LLC)*, 608 F. App'x 40, 41 (2d Cir. 2015) (unpublished) ("In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, a court asks whether the settlement is 'fair and equitable,' considering the [Iridium Factors]."); *Ambac Fin. Grp., Inc.,* 457 B.R. 299, 303 (Bankr. S.D.N.Y. 2011)*, aff'd,* No. 10-B-15973, 2011 WL 6844533 (S.D.N.Y. Dec. 29, 2011)*, aff'd,* 487 F. App'x 663 (2d Cir. 2012) (unpublished) ("here in the Southern District of New York we apply the Iridium [F]actors in evaluating a proposed settlement"). The Iridium Factors include:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
>
> (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
>
> (4) whether other parties in interest support the settlement;
>
> (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
>
> (6) the nature and breadth of releases to be obtained by officers and directors; and
>
> (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC,* 478 F.3d at 462 (citation modified). If the Court finds that "most or all of the [Iridium Factors] are satisfied, the settlement should be approved." *In re 305 E. 61st St.*

13

*Grp. LLC*, No. 19-11911, 2022 WL 16749111, at *3 (Bankr. S.D.N.Y. Nov. 7, 2022). Below, the Court applies the Iridium Factors to the Settlement Stipulation.

## ANALYSIS

### (1) The Balance Between the Litigation's Possibility of Success and the Settlement's Future Benefits

Balancing the litigation's possibility of success and the settlement's future benefits, the Court concludes that the first Iridium Factor weighs in favor of approving the settlement. The Settlement Stipulation benefits the estate because it provides immediate payment of $225,000.00 and avoids the cost and risk of litigation. The benefits of the settlement are clear—it provides an immediate and certain resolution of the Adversary Proceeding. *In re Wythe Berry Fee Owner LLC*, 660 B.R. 534, 565 (Bankr. S.D.N.Y. 2024); *accord In re Roman Cath. Diocese of Rockville Ctr.*, 665 B.R. 71, 85-86 (Bankr. S.D.N.Y. 2024) ("Notably, funds from the settlement amount will be *immediately available* to pay creditors who have waited far too long for compensation. At the same time, the Settlement will also resolve the highly contentious and costly insurance coverage actions pending in District Court, which the Debtor has indicated involve fact-intensive issues that will likely require resolution on a claim-by-claim basis." (citations omitted)); *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009) (finding that reduction in debt and the "cessation of the costs of further litigation" was a sufficient benefit to the estate when compared with uncertain chances of success in litigation).

**(2) The Likelihood of Complex and Protracted Litigation, with its Attendant Expense, Inconvenience, and Delay, Including the Difficulty in Collecting on the Judgment**

The likelihood of protracted litigation, even were it not complex, and its expenses and delays lead this Court to conclude the second Iridium Factor weighs in favor of granting the Motion. The Trustee states that, while she believes there is merit to the Appeal, success is not guaranteed, and Blatter has indicated he may move to dismiss the Appeal on the grounds that the Order is not a final, appealable order. Motion at 6.

Success is also not guaranteed if the Trustee were to prevail on her Appeal or amend her Complaint to strengthen the factual allegations in it. *Id*. Even were the Appeal successful or the Complaint replead, the Trustee would still have to adequately allege and prove a breach of fiduciary duty. To do so the Trustee must allege facts sufficient to demonstrate "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d at 352. Elements two and three are highly fact dependent and would be the subject of discovery and, possibly, more dispositive motion practice. Even were she to succeed in defending a dispositive motion, the legal expenses Blatter would incur in that litigation would be paid from the Policy, reducing the amount of proceeds available for recovery by the Trustee.

The agreement will provide immediate benefits to the estate, whereas litigation of the Adversary Proceeding will be risky, complex, and expensive. *See In re MF Glob. Inc.*, 2012 WL 3242533, at *6. In short, continuing to litigate the case "would be a lengthy and costly process whose outcome is uncertain." *In re 305 E. 61st St. Grp. LLC*, 2022 WL 16749111, at *3; *accord In re Wythe Berry Fee Owner LLC*, 660 B.R. at 565 (finding second Iridium Factor favored approval where, absent settlement, "litigation would be protracted, lengthy, expensive, and uncertain").

15

**(3) The Paramount Interests of the Creditors and the
Degree to Which Creditors Support the Proposed Settlement**

The Insurer will pay $225,000 and an additional $20,000 in satisfaction of the Mediator's fee. Motion at 5. The Trustee's counsel has already incurred fees of $400,000. *Id*. at 7 n.1. "[A]s there is a limited amount of money in the estate, it is in the best interest of all the creditors that the settlement happen now instead of a long and protracted litigation where such litigation could dissipate the very funds that would be used to pay creditors." *In re 305 E. 61st St. Grp. LLC*, 2022 WL 16749111, at *3. Furthermore, the settlement "serves the interest of creditors as it offers a clear and definitive resolution of pending and anticipated litigation thereby conserving estate resources" and offers a final resolution to the Adversary Proceeding and the bankruptcy case. *In re Wythe Berry Fee Owner LLC*, 660 B.R. at 565. Finally, no creditor has objected to the Motion. Therefore, the third factor weighs in favor of approving the Settlement Stipulation.

**(4) Whether Other Parties in Interest Support the Settlement**

No responses were filed to the Motion. As no parties in interest have supported or opposed the Settlement Agreement, this factor is neutral.

**(5) The Competency and Experience of Counsel Supporting the Settlement**

Fifth, the competency and experience of the professionals weighs in favor of approval. The Trustee and counsel for Blatter who support the settlement are experienced litigators and have negotiated at arm's length. *In re 305 E. 61st St. Grp. LLC*, 2022 WL 16749111, at *4; *accord Ehrlich v. DiStefano (In re DiStefano),* 654 B.R. 49, 56 (Bankr. N.D.N.Y. 2023) (finding the fifth factor supported approval of settlement where the parties' counsel had "years of experience in bankruptcy," had "engaged in or presided over complex litigation," and were "more than able to spot potential legal issues or factual pitfalls in their positions."). Counsels' competency has not been questioned by any party, and there is no reason for the Court to do so. *See In re Roman Cath.*

16

*Diocese of Rockville Ctr.*, 665 B.R. at 87. Moreover, the Settlement Stipulation was drafted with the guidance of the Mediator.

**(6) The Nature and Breadth of Releases to be Obtained by Officers and Directors**

As part of the Settlement Stipulation,

> the Trustee, the bankruptcy estate, and solely in their capacities as such, each of their respective officers, directors, principals, employees, representatives, attorneys, agents, professionals, successors and assigns . . . , shall be deemed to have released and forever discharged Blatter, and solely in their capacities as such, his successors, heirs, executors, administrators, representatives, attorneys, agents, insurers (including Scottsdale), professionals, successor and assigns (collectively, the "Defendant Parties") from any and all claims; and (b) the Defendant Parties shall be deemed to have released the Trustee Parties from any and all claims

Motion at 5. The nature and breadth of the releases contained in the Settlement Stipulation are fair and reasonable under the circumstances because "(i) they provide certainty and finality to the Parties with respect to matters the Settlement [Stipulation] resolves and (ii) were necessary to induce the Parties to enter into the Settlement." *In re Wythe Berry Fee Owner LLC*, 660 B.R. at 567. The Court finds the releases to be appropriate in nature and in scope, as they are narrowly tailored, are based on the extensive negotiations, and are necessary to reaching an agreement. *In re Ambac Fin. Grp., Inc.,* 457 B.R. at 303.

**(7) The Extent to Which the Settlement is the Product of Arm's Length Bargaining**

There is nothing in the record to indicate that the Settlement Stipulation was reached by anything short of arms-length negotiations. The Parties engaged in multiple rounds of mediation and argued vigorously concerning the Motion to Dismiss. "The Parties have been on opposing sides of protracted, hard-fought litigation before the Settlement. Therefore, it is highly unlikely that the negotiations leading up to the Settlement have been nothing short of true arm's-length bargaining." *In re Wythe Berry Fee Owner LLC*, 660 B.R. at 568. As discussed, "the Settlement

17

[Stipulation is] the product of extensive, arm's-length negotiations and follow multiple rounds of mediation with experienced mediators." *In re Roman Cath. Diocese of Rockville Ctr.*, 665 B.R. at 87; *accord In re Ambac Fin. Grp., Inc.*, 457 B.R. at 307 ("There has been no evidence presented that the settlement, achieved through numerous mediation sessions taking place under the watchful eye of [the mediator] over the course of more than one year, was the result of anything other than arm's length negotiating.").

The Court has canvassed the issues and finds that, after examining the Iridium Factors, the Trustee's business judgment, and the general policy favoring settlement, that the Settlement Stipulation falls above the lowest point of reasonableness. The Court concludes that the Settlement Stipulation is in the best interests of the estate. Therefore, the Court approves the Settlement Stipulation.

## **CONCLUSION**

Based on the foregoing, the Court grants the Motion. The Trustee is directed to submit an order.

IT IS SO ORDERED.

Dated:  September 26, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge